Court Of Appeals
Fourth Court of Appeals District of Texas
San Antonio



★  ★  ★                                    ★  ★  ★



# MEMORANDUM OPINION

No. 04-09-00228-CR

Juan Rodriguez **BARCENES**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 379th Judicial District Court, Bexar County, Texas
Trial Court No. 2008CR0901
Honorable Philip A. Kazen, Jr., Judge Presiding

Opinion by:    Catherine Stone, Chief Justice

Sitting:        Catherine Stone, Chief Justice
                Phylis J. Speedlin, Justice
                Marialyn Barnard, Justice

Delivered and Filed: April 14, 2010

AFFIRMED

Juan Rodriguez Barcenes was convicted by a jury of felony driving while intoxicated.  On

appeal, Barcenes contends the trial court erred in denying his motion to suppress and in failing to

include an instruction in the jury charge.  We affirm the trial court's judgment.

### MOTION TO SUPPRESS

We review a trial court's ruling on a motion to suppress under an abuse of discretion

standard.  *State v. Dixon*, 206 S.W.3d 587, 590 (Tex. Crim. App. 2006).  We will sustain the trial

court's ruling if it is reasonably supported by the record and is correct on any theory of law applicable to the case. *Id*. When, as here, the trial court makes no findings of fact, we review the evidence in the light most favorable to the trial court's ruling and "assume that the trial court made implicit findings of fact supported in the record that buttresses its conclusion." *Carmouche v. State*, 10 S.W.3d 323, 327-28 (Tex. Crim. App. 2000). We give almost total deference to a trial court's express or implied determination of historical facts and review *de novo* the court's application of the law to those facts. *State v. Dixon*, 206 S.W.3d at 590.

In his first point of error, Barcenes contends the trial court abused its discretion in failing to suppress statements he made regarding his alcohol consumption because the statements were the product of a custodial interrogation and elicited without Barcenes being advised of his *Miranda*[1] rights. The State responds that the encounter between Barcenes and the arresting officer had not risen to the level of a custodial interrogation; therefore, the motion to suppress was properly denied.

A person who is being temporarily detained is not free to leave, but is being detained while an officer investigates whether a crime has been committed. *State v. Sheppard*, 271 S.W.3d 281, 289 (Tex. Crim. App. 2008). A temporary detention is not, however, a custodial arrest. *Id*. at 289. The Texas Court of Criminal Appeals has outlined four general situations which may constitute custody: (1) when the suspect is physically deprived of his freedom of action in any significant way; (2) when a law enforcement officer tells the suspect that he cannot leave; (3) when law enforcement officers create a situation that would lead a reasonable person to believe that his freedom of movement has been significantly restricted; and (4) when there is probable cause to arrest and law enforcement officers do not tell the suspect that he is free to leave. *Dowthitt v. State*, 931 S.W.2d 244, 255 (Tex.

---

[1] *Miranda v. Arizona*, 384 U.S. 436 (1966).

Crim. App. 1996). In the fourth situation, the officer's knowledge of probable cause must be manifested to the suspect. *Id*. In the first three situations, the restriction on movement must amount to the degree associated with an arrest as opposed to an investigative detention. *Id*. Several factors may be considered in determining whether an encounter is an arrest or a detention, including: (1) the amount of force displayed; (2) the duration of the detention; (3) the efficiency of the investigative process and whether it is conducted at the original location or the person is transported to another location; (4) the officer's expressed intent – that is, whether he told the detained person that he was under arrest or was being detained only for a temporary investigation; and (5) any other relevant factors. *State v. Sheppard*, 271 S.W.3d at 291.

Deputy Paul Rodriguez, a seventeen-year veteran with the Bexar County Sheriff's Office, testified that he observed a vehicle failing to drive in a single-marked lane around 10:00 p.m. He observed the vehicle going over the center, double-yellow, dividing line and then going back onto the grassy shoulder of the road. As the vehicle started pulling away, Deputy Rodriguez activated his radar and determined that the vehicle was traveling at 54 m.p.h., which was over the 40 m.p.h. speed limit. Deputy Rodriguez accelerated to catch up to the vehicle and activated his overhead lights. When the vehicle did not stop, Deputy Rodriguez activated his siren after which the vehicle stopped. Deputy Rodriguez stated that he believed the driver was either intoxicated or having a medical issue requiring Deputy Rodriguez to investigate further.

As Deputy Rodriguez exited his vehicle, he observed the driver moving around in the vehicle and reaching to his right. Deputy Rodriguez stated that he pulled his service weapon as he approached the driver's side of the vehicle because he was unsure if the driver was grabbing something or if the vehicle was stolen. When Deputy Rodriguez arrived at the window, he pointed

his weapon at the driver and told him to let him see his hands. Deputy Rodriguez had to repeat his request for the driver to show his hands. After Deputy Rodriguez told the driver, who was subsequently identified as Barcenes, to exit the vehicle, Barcenes almost fell back into the vehicle while trying to get to his feet and had to hold the vehicle to steady himself. Deputy Rodriguez holstered his weapon and observed that Barcenes had urinated on himself and had a strong odor of alcoholic beverages. When Deputy Rodriguez asked Barcenes why he failed to stop, Barcenes, whose speech was slurred, responded that he did not know that Deputy Rodriguez was behind him. In response to Deputy Rodriguez's question as to whether Barcenes had been drinking, Barcenes stated that he had. Deputy Rodriguez then stated that Barcenes might not have seen his lights because he had too much to drink. In response to Deputy Rodriguez's question regarding how much Barcenes had to drink, Barcenes stated that he had consumed a six-pack of 16-ounce cans of beer.

At that time, Barcenes asked permission to urinate. Deputy Rodriguez allowed Barcenes to go to the side of Deputy Rodriguez's vehicle and urinate. After Barcenes urinated, Deputy Rodriguez performed a horizontal gaze nystagmus test and observed all six clues. Deputy Rodriguez asked Barcenes to perform the walk-and-turn test. Barcenes initially attempted to perform the test before Deputy Rodriguez had finished explaining it, but then stated he was unable to perform the test because of his back which he had broken thirty years earlier. Barcenes also was unable to recite his alphabet or estimate the passage of 30 seconds. At that point, Deputy Rodriguez advised Barcenes that he was under arrest.

Applying the factors used to distinguish between an arrest and a temporary detention, we note that Deputy Rodriguez conducted his investigation at the location where Barcenes was originally stopped. Deputy Rodriguez never told Barcenes he was under arrest prior to the actual arrest and

allowed Barcenes the freedom to urinate on the side of the road. Finally, the detention lasted only as long as necessary for Deputy Rodriguez to conduct field sobriety tests.

Barcenes specifically complains that Deputy Rodriguez had developed probable cause to arrest Barcenes before questioning him about his alcohol consumption and did not inform Barcenes he was free to leave. A person who is being detained, however, is not free to leave. *State v. Sheppard*, 271 S.W.3d at 289. "That is precisely what *Terry*[2] permits – a temporary detention, in which the person is not free to leave, while the police officer investigates whether a crime has been committed." *Id*. Moreover, although Deputy Rodriguez admitted that he did not inform Barcenes that he was free to leave, Deputy Rodriguez also testified that Barcenes never asked to leave. More importantly, even if Deputy Rodriguez believed he had probable cause prior to the time he actually arrested Barcenes, the record does not support that this was ever manifested to Barcenes. *See Dowthitt*, 931 S.W.2d at 255; *see also Abernathy v. State*, 963 S.W.2d 822, 824 (Tex. App.—San Antonio 1998, pet. ref'd) (police officer's subjective view does not bear upon question of whether a suspect is in custody for purposes of *Miranda* if the subjective view is not disclosed by the officer to the suspect).

Barcenes also specifically relies on Deputy Rodriguez's having pulled his service weapon as evidence that the encounter was more than a detention, citing *Alford v. State*, 22 S.W.3d 669 (Tex. App.—Fort Worth 2000, pet. ref'd). In *Alford*, however, the officer physically removed the defendant from his truck, put him on the ground, and handcuffed him. *Id*. at 671. The defendant then remained handcuffed for six or seven minutes until another officer arrived on the scene who questioned the defendant about his alcohol consumption. *Id*. at 671-72. Unlike the facts in *Alford*,

---

[2] *Terry v. Ohio*, 392 U.S. 1 (1968).

the facts in this case are more akin to the facts presented in *State v. Sheppard*, 271 S.W.3d at 289-90. In *Sheppard*, the defendant was placed in handcuffs until the officer checked a residence for officer safety, and the handcuffs were removed as soon as the officer completed the brief sweep of the residence. *Id*. Similarly, Deputy Rodriguez drew his service weapon for officer safety, but immediately holstered the weapon when Barcenes exited the vehicle.

Viewing the evidence in the light most favorable to the trial court's ruling, Deputy Rodriguez's investigation had not proceeded beyond a temporary detention when he asked Barcenes about his alcohol consumption. Instead, the questions "were in pursuance of a temporary investigation to determine whether or not [Barcenes] was driving a motor vehicle while intoxicated." *Abernathy*, 963 S.W.2d at 825. Accordingly, the trial court did not abuse its discretion in denying the motion to suppress.

## JURY CHARGE

In his second point of error, Barcenes contends that he was entitled to a jury instruction under Article 38.23. Article 38.23 provides:

> No evidence obtained by an officer or other person in violation of any provisions of the Constitution or laws of the State of Texas, or of the Constitution or laws of the United States of America, shall be admitted in evidence against the accused on the trial of any criminal case. In any case where the legal evidence raises an issue hereunder, the jury shall be instructed that if it believes, or has a reasonable doubt, that the evidence was obtained in violation of the provisions of this Article, then and in such event, the jury shall disregard any such evidence so obtained.

TEX. CODE CRIM. PROC. ANN. art. 38.23(a) (Vernon 2005). The State responds that the jury instruction was not required because the record did not contain any conflicting testimony regarding the relevant facts.

In order to be entitled to an instruction under Article 38.23, Barcenes had to establish the following:

(1) the evidence heard by the jury raised an issue of fact;

(2) the evidence on that fact was affirmatively contested; and

(3) that contested factual issue was material to the lawfulness of the challenged conduct in obtaining the evidence.

*Madden v. State*, 242 S.W.3d 504, 409 (Tex. Crim. App. 2007).  Thus, in order to be entitled to an instruction under Article 38.23, a genuine dispute about a material fact must exist.  *Id*.  If there is no disputed factual issue, the legality of the conduct is determined by the trial judge alone, as a question of law.  *Id*.

In the instant case, Deputy Rodriguez was the only witness who testified regarding the circumstances of his investigation; therefore, his testimony regarding the relevant facts was uncontroverted.  Although Barcenes contends that Deputy Rodriguez's testimony was conflicting regarding the relevant facts, we have reviewed the testimony and the videotape of the investigation and conclude the evidence contains no self-evident conflict that would require a jury instruction.[3] *See Estrada v. State*, 30 S.W.3d 599, 605 (Tex. App.—Austin 2000, pet. ref'd).  Accordingly, the trial court did not err in denying Barcenes's request for an Article 38.23 jury instruction.

---

[3] The only conflict Barcenes refers to in his brief relates to an alleged conflict regarding when Deputy Rodriguez developed probable cause to arrest Barcenes.  The development of probable cause to arrest would elevate a temporary detention to a custodial arrest only if the officer's knowledge of probable cause was manifested to the suspect.  *Dowthitt*, 931 S.W.2d at 255.  Because Deputy Rodriguez never disclosed his opinion regarding the existence of probable cause to Barcenes, any conflict in Deputy Rodriguez's testimony regarding when he developed probable cause was not material in determining whether the encounter between Deputy Rodriguez and Barcenes was a temporary detention or a custodial arrest.

## Conclusion

The trial court's judgment is affirmed.

Catherine Stone, Chief Justice

DO NOT PUBLISH