The STATE of Texas, Appellant,

v.

Richard Raymond DIXON, II.

No. PD–0077–05.

Court of Criminal Appeals of Texas.

Feb. 15, 2006.

Opinion Denying Rehearing
June 14, 2006.

Steven R. Miears, Bonham, for Appellant.

Jeffrey L. Van Horn, First Asst. State's Atty., Matthew Paul, State's Atty., Austin, for State.

MEYERS, J., delivered the opinion of the Court, in which PRICE, JOHNSON, HERVEY, and COCHRAN, JJ., joined.

Appellee, Richard Raymond Dixon, was stopped for an alleged traffic violation. After an extensive search, officers found methamphetamine on the passenger who was in the car with Appellee. Appellee was arrested and charged with possession of methamphetamine. He filed a motion to suppress the evidence, which was granted by the trial court. The State appealed and the court of appeals affirmed the judgment of the trial court. *State v. Dixon*, 151 S.W.3d 271 (Tex.App.-Texarkana 2004). The State Prosecuting Attorney filed a petition for discretionary review asking us to consider whether a traffic stop must be effectuated within a reasonable time and distance after the alleged traffic violation. We will affirm the judgment of the court of appeals.

## FACTS

A confidential informant told officers about a residence which contained drugs. While officers were conducting a search of that residence, the owner, who was subsequently arrested, told them that Appellee had two eight balls of methamphetamine. As a result of this information, officers were called to initiate surveillance of Appellee's place of business. The officers observed Appellee and a female companion drive away from the business, so the officers followed. The officers observed Appellee make a right-hand turn from a designated right-turn-only lane without signaling the turn. They continued following Appellee for over a mile and observed him make a left-hand turn from a designated left-turn-only lane without signaling the turn. After following Appellee for 3.2 miles after they first observed him make an unsignaled turn, the officers pulled him over. They informed him that they had pulled him over for a traffic violation and asked to search his car. Appellee gave them consent, and they searched the car and found nothing. They then searched Appellee and the passenger and found nothing. Next, they waited for the drug dog. The drug dog arrived and sniffed Appellee and the passenger and found nothing. The officers then called for a female officer to conduct a more extensive search of the passenger. The female officer searched the passenger's underwear and found three baggies of methamphetamine. Appellee was charged with possession of the methamphetamine found in the passenger's underwear. The passenger was also arrested and pleaded guilty to the possession. Appellee filed a motion to suppress all evidence seized as a result of the traffic stop. The trial court held a hearing in which both parties discussed the evidence, but the court did not hear testimony from the officers. The trial court granted the motion to suppress the evidence. After a request by the State for findings of fact and conclusions of law, the trial court entered the following:

### Findings of Fact and Conclusions of Law

1. On November 18, 2002, officers with the Paris Police Department and RCSAP Drug–Task Force executed a search warrant at 34355 24th SE in Paris, Lamar County, Texas.

2. The primary resident of the premises searched advised officers that defendant was in possession of two eight balls of Methamphetamine.

3. Officers set up surveillance on the business premises of defendant.

4. The arresting officer observed defendant and a female companion leave defendant's business premises in defendant's vehicle.

5. At the intersection of North Main Street and Pine Bluff Street in Paris, Lamar County, Texas the defendant's vehicle turned right from a designated right turn lane at the intersection.

6. At the intersection of Pine Bluff Street and 20th N.E. Street in Paris, Lamar County, Texas defendant's vehicle turned left from a designated left turn lane at the intersection.

7. The right hand turn and the left hand turn were lawful turns from designated turn lanes that allowed those lanes to be used for turns only.

8. The arresting officer stopped defendant's vehicle for the alleged traffic violation 3.2 miles from the point of the alleged violation at the intersection of North Main and Pine Bluff Street.

9. No outside force or entity interfered with the arresting officer's ability to stop defendant's vehicle between the point of the alleged violation and the actual stop of defendant's vehicle for the alleged violation.

10. The defendant was detained for an alleged traffic violation occurring at North Main Street and Pine Bluff Street and upon information obtained from the occupant of the premises upon which the search warrant was run.

11. The arresting officer did not make the traffic stop within a reasonable time after the alleged violation.

12. The arresting officer did not make the traffic stop within a reasonable distance after the alleged violation.

13. The arresting officer detained defendant until the arrival of a drug dog that was en route to the vehicle location.

14. The information obtained from the resident of the premises searched was not from a reliable source.

15. No drug was found to be in the possession of the defendant after being searched.

16. No drug was found within the defendant's vehicle after being searched.

17. Three baggies of Methamphetamine were found in the underwear being worn by the female companion who was in the defendant's vehicle.

The State appealed the trial court's ruling, arguing that the court erred in failing to hear testimony from the officers at the suppression hearing and thus, because no evidence was presented, the court should not have entered findings of fact. The State also argued in its brief to the court of appeals that the trial court suppressed the evidence in this case because it was a pretext stop, and this was an error since pretext stops are legal under *Crittenden v. State*, 899 S.W.2d 668, 674 (Tex.Crim.App. 1995).

Instead of considering the pretext-stop issue, the decision of the court of appeals focuses on the time and distance between the unsignaled turn and the stop. The court of appeals held that the trial court suppressed the evidence because it concluded that the 3.2–mile delay between the alleged traffic violation and the stop was not within a reasonable time or distance. *Dixon*, 151 S.W.3d at 274. Although no witnesses testified at the hearing, the record shows that the parties agreed about the facts and the sequence of events that occurred surrounding the traffic stop and search. Because the record supports the trial court's decision to suppress the evidence, the court of appeals affirmed the judgment. *Id.* at 275. We granted the State Prosecuting Attorney's ground for review which asked, "In order to render a lawful motor vehicle stop for a traffic offense, must the stop be effectuated within a reasonable time and reasonable distance after the alleged violation?"

## STANDARD OF REVIEW

The job of an appellate court in cases such as the one before us is to review the decision of the lower court for an abuse of discretion. We view the record in the light most favorable to the trial court's conclusion and reverse the judgment only if it is outside the zone of reasonable disagreement. We will sustain the lower court's ruling if it is reasonably supported by the record and is correct on any theory of law applicable to the case. *Romero v. State,* 800 S.W.2d 539, 543 (Tex. Crim.App.1990). We give almost total deference to a trial court's express or implied determination of historical facts and review *de novo* the court's application of the law of search and seizure to those facts. *State v. Ross,* 32 S.W.3d 853, 856 (Tex. Crim.App.2000) (citing *Carmouche v. State,* 10 S.W.3d 323 (Tex.Crim.App.2000), and *Guzman v. State,* 955 S.W.2d 85 (Tex. Crim.App.1997)).

## ANALYSIS

First, we disagree with the State Prosecuting Attorney that the issue in this case is whether it is reasonable for police to follow a driver for over three miles after an alleged traffic violation before pulling him over. This ground for review seems to miss the essence of the trial court ruling. The trial court's findings of fact indicate that the stop and search were generally unreasonable for reasons other than the unnecessary delay between the turns and the stop, including: the turns were lawful; the length of the detention and extent of the search were excessive; and the information on which the police based the surveillance was not from a reliable source.

While the court of appeals considered the limitations on an officer's ability to delay a stop, a review of the record from the hearing indicates that the delay between the turns and the stop was not discussed at length, rather it was mentioned only by the defense attorney at the beginning of the hearing when the court asked for an overview of the evidence to be presented. The only other mention of the distance between the turns and the stop was the following discourse, which occurred at the beginning of the rescheduled hearing.

THE COURT: This is the case where there was a right hand turn from a right hand dedicated turn lane and a left hand turn from a left hand dedicated turn lane. I believe that the officers said they followed the car for two and a half miles.

DEFENSE: 3.2

THE COURT: From the original stop. Then they claimed they stopped the car because they failed to give a right hand signal from the dedicated right hand turn lane at North Main and Pine Ridge Road.

STATE: North Main and Pine Bluff or Pine Bluff and 20th.

DEFENSE: Both turns were from dedicated lanes. The officers claimed that they were making a traffic arrest. Of course they didn't make it for another mile down the road instead of at the time the alleged violation occurred.

Thus, the issue in this case is not the amount of time or the distance between the turns and the traffic stop. It is clear from the hearing that the trial judge simply did not believe that the driver in this case committed a traffic offense by making a turn from a designated turn lane without using a signal. The trial judge stated:

Even though they may be testifying they stopped him for a traffic offense, the court's not bound by that. I don't care what they say they stopped him for. If I find there was an legal [sic] basis for

it, I think that's what I have to make my ruling on. It seems to me that the traffic stop, if the facts you recite are correct and he made two turns from dedicated turn lanes on the light, I would not think that there was any valid traffic stop.

The trial court's findings of fact and conclusions of law state that the turns made by Appellee were lawful, and thus no traffic violation occurred.

It is also clear that the trial court did not believe the officers' allegations that they pulled Appellee over because he committed a traffic offense. The fact that they waited for over three miles after the alleged violation to stop Appellee diminishes the credibility of their claim that they stopped him for an unlawful turn. By entering the findings of fact and conclusions of law relating to the time and distance the police followed the driver, the trial judge was in effect saying, "If you really thought the driver had committed a traffic offense, then why did you wait so long before pulling him over?"

While the court of appeals may have unnecessarily focused on the distance and time the police followed the driver before pulling Appellee over, the court properly determined that it was within the discretion of the trial judge to decide whether to believe the officers' claim that they pulled Appellee over for a traffic offense. The trial judge made it clear that he believed the turns made by Appellee were lawful, so no traffic violation was committed and the stop was not valid. Because the trial court did not believe that an offense had occurred, the evidence was obtained as a result of an unlawful stop. The record supports the trial court's conclusion that the search was not conducted pursuant to a valid traffic stop, and the evidence was properly suppressed.

## CONCLUSION

The trial court did not abuse its discretion in suppressing the evidence and the court of appeals properly held that the record supports the trial court's decision. The decision of the court of appeals is affirmed.

HOLCOMB, J., concurred.

WOMACK, J., filed a dissenting opinion, in which KELLER, P.J., and KEASLER, J., joined.

WOMACK, J., dissenting, in which KELLER, P.J., and KEASLER, J., joined.

As the Court's opinion points out, *ante* at 590–91, the Court of Appeals' opinion fell into the ditch by attributing more importance to the issue of the officers' delay in stopping the appellant than the record will bear. I fear that this Court's opinion may be running into the ditch on the other side of the road.

As the Court's opinion says, *ante* at 590, we should "give almost total deference to a trial court's express or implied determination of historical facts and review *de novo* the trial court's application of the law ... to those facts."

I agree with the Court's statement, *ante* at 591: "The trial judge made it clear that he believed the turns made by appellee were lawful, so no traffic violation was committed and the stop was not valid." That belief was expressly stated at the beginning of the trial court's Finding of Fact and Conclusion of Law Number 7, *ante* at 589: "The right hand turn and the left hand turn were lawful turns ...."

The problem, with which this Court's opinion does not deal, is that we cannot tell whether the trial judge's belief was a finding of fact, to which we owe almost total

deference, or a conclusion of law, to which we owe none.

If Number 7 was a finding of fact that the turns were legal because the appellee did signal his intention to turn each time, we are bound to accept that finding. But is it not remarkable that the word "signal" appears nowhere in the findings of fact and conclusions of law?

Is the Court overlooking the significance of the rest of the words in Number 7? "The right hand turn and the left hand turn were lawful turns *from designated turn lanes that allowed those lanes to be used for turn only.*" Do those words not suggest that the trial court concluded, as a matter of law, that a driver may turn from a dedicated turn lane without signaling? Such a conclusion would be reviewed *de novo.*

Are not the trial court's oral statements more consistent with a conclusion of law than a finding that the officers were lying about the absence of turn signals? The judge said (see *ante* at 590–91):

> Even though they may be testifying they stopped him for a traffic offense, the court's not bound by that. I don't care what they say they stopped him for. If I find there was an legal [illegal?] basis for it, I think that's what I have to make my ruling on. It seems to me that the traffic stop, if the facts you recite are correct and he made two turns from dedicated turn lanes on the light, I would not think there was any valid traffic stop.

I have inserted the word "illegal" in the third sentence because it seems more likely to be what the judge said, in light of the fourth sentence. And the fourth sentence is consistent with a conclusion of law about the requirement to signal from a dedicated turn lane, and inconsistent with a finding of fact that the appellant did signal.

The case well could turn on a conclusion of law, not a finding of fact. The question could be resolved easily by a remand to the trial court.

I respectfully dissent.

## ORDER

PER CURIAM.

The State Prosecuting Attorney has filed a motion for rehearing and urges this Court to reconsider its decision on original submission. The State Prosecuting Attorney's original petition for discretionary review raised one ground: "In order to render lawful a motor vehicle stop for a traffic offense, must the stop be effected within a reasonable time and a reasonable distance after the alleged violation." The short answer to that issue, as set out in the original opinion, was yes.

The State Prosecuting Attorney now complains that the analysis in the original opinion was improper and that the opinion did not address the decision and reasoning of the court of appeals. We note that the court of appeals included in its opinion an alternative holding: "There were no witnesses to give formal testimony in this case, but it is clear counsel for both sides agreed on the facts involved, the sequence of events, and the reasons for the actions taken by the arresting officers. It was within the discretion of the trial court to determine whether to believe the officers' allegations. *See Meek v. State*, 790 S.W.2d 618, 620 (Tex.Crim.App.1990). A reasonable review of the record supports the court's decision in this, as well as in its determination that too much time and space elapsed before the stop. We find the record can reasonably be viewed as supporting the trial court's conclusion, when viewed in the light most favorable to that conclusion." *Dixon v. State*, 151

S.W.3d 271, 275 (Tex.App.–Texarkana 2004).

The State Prosecuting Attorney did not seek review of that alternative ruling. When a court of appeals issues alternative rulings on the same issue, its decision will be affirmed if fewer than all alternative rulings are appealed. *Sims v. State*, 792 S.W.2d 81, 82 (Tex.Crim.App.1990)(improvidently granted; appellant did not challenge the court of appeals's alternative holding.) *See also*, 43A GEORGE E. DIX & ROBERT O. DAWSON, TEXAS PRACTICE: CRIMINAL PRACTICE AND PROCEDURE § 44.30 (2d ed.2001)(unless all alternative grounds are challenged, a ruling from the Court of Criminal Appeals does not affect the outcome and is therefore advisory.) The State Prosecuting Attorney's motion for rehearing is denied.

WOMACK, J., concurs.

KELLER, P.J., dissents.