In
The

                                                Court
of Appeals

                        Sixth
Appellate District of Texas at Texarkana

 

                                                ______________________________

 

                                                             No. 06-09-00238-CR

                                                ______________________________

 

 

                                 WILLIAM BARRY TRAVIS,
Appellant

 

                                                                V.

 

                                     THE STATE OF TEXAS, Appellee

 

 

                                                                                                  


 

 

                                            On Appeal from the County Court at Law

                                                          Cherokee
County, Texas

                                                            Trial
Court No. 48393

 

                                                                 
                                 

 

 

 

                                          Before Morriss, C.J.,
Carter and Moseley, JJ.

                                                    Opinion by Chief Justice Morriss








                                                                   O P I N I O N

 

            The small
white pickup truck driven by William Barry Travis in Cherokee County[1]
was not seen violating any traffic law or exhibiting any signs that the driver
was intoxicated or otherwise in distress, when Officer Matthew Poole saw,
followed, and ultimately stopped it. 
Poole was acting on an earlier telephoned report that Travis had been
intoxicated when he assaulted his brother and left the scene driving a small,
white pickup truck.  As a result of the
stop, Poole discovered evidence suggesting that, in fact, Travis was
intoxicated.

            Travis argued
to the trial court that the stop was improper and that, therefore, the evidence
should be suppressed.  After the trial
court overruled Travis’ motion to suppress the evidence, Travis was convicted
of DWI and sentenced to 180 days’ confinement and a $2,000.00 fine.  On appeal, Travis continues his
argument.  Because we agree, we reverse
the judgment and remand this case to the trial court for further proceedings
consistent with this opinion.

            Poole
received a call from Travis’ brother “claiming that he had assaulted him . . .
[and] that [Travis] had left the scene and was intoxicated.”  Travis’ brother did not want to press
charges, and no warrant was obtained. 
Poole was patrolling one or two hours later when he heard that “an
elderly subject,[2] [was] possibly
passed out behind the wheel of” a “small white pickup.”  Poole was dispatched to Farm-to-Market 344
and 346 “as a welfare concern.”  Because
Travis’ brother said Travis left in “his white, Chevrolet S-10 pickup,” Poole
thought the welfare concern could be a “10-56,” that is, a possible
intoxication case.  

            While he was
in route to his dispatch destination, Poole was passed by a white Chevrolet
S-10 pickup.  He turned around “and
pursued it, to see—you know, to investigate further whether it would be the
vehicle I was looking for.”  Poole did
not see any sign of distress from the driver and did not believe him to be a
danger to himself or others.  Travis
violated no speeding or other traffic law. 
Poole testified he had no articulable facts to lead him to stop the car
based on a reasonable suspicion of DWI. 
Nevertheless, Poole continued to follow Travis and ran a records check
on the vehicle registration.  Poole
concluded “that this was going to be the person related to the disturbance
earlier in the day,” and believed “it was apparent that this was going to be
probably the vehicle that I was in route to check on.”  Thus, he signaled for Travis to pull over. 

            Travis
sought to suppress Poole’s testimony that Travis smelled of alcohol, had
glassy, bloodshot eyes, was harboring a Natural Light on his vehicle
floorboard, and admitted to drinking four or more beers.[3]  The trial court found that Poole did not have
reasonable suspicion to stop Travis for DWI, and this finding is not disputed
by any party.[4]  The issue on appeal is whether the trial
court erred in impliedly finding that the community caretaker exception applied
to justify the traffic stop.[5]  We hold that the caretaker exception did not
apply.

            In reviewing a trial court’s
ruling on a motion to suppress, we give almost total deference to the trial
court’s determination of historical facts and review de novo any questions of
law concerning the search and seizure.  Carmouche v. State, 10 S.W.3d 323, 327
(Tex. Crim. App. 2000).  We will sustain
the admission of the evidence if admission is reasonably supported by the
record and correct on any theory of law applicable to the case.  Laney v.
State, 117 S.W.3d 854, 857 (Tex. Crim. App. 2003); Willover v. State, 70 S.W.3d 841, 845 (Tex. Crim. App. 2002). 

            The
Fourth Amendment prohibits “unreasonable searches and seizures.” U.S. Const. amend. IV.  This prohibition extends to “brief
investigatory stops such as the stop of [a] vehicle.” United States v. Cortez, 449 U.S. 411, 417 (1981); see Corbin v. State, 85 S.W.3d 272, 276
(Tex. Crim. App. 2002).  Such a stop must
be objectively reasonable in light of the particular circumstances of the
case.  Maryland v. Wilson, 519 U.S. 408, 411 (1997); Terry v. Ohio, 392 U.S. 1, 21–22 (1968); Corbin, 85 S.W.3d at 276.  Reasonableness depends on “a balance between
the public interest and the individual’s right to personal security free from
arbitrary interference by law enforcement.” 
Corbin, 85 S.W.3d at 276 (quoting Wilson, 519 U.S. at 411).  A seizure based on reasonable suspicion will
generally be reasonable; however, the trial court explicitly ruled that Poole
did not have reasonable suspicion to stop Travis.[6]  Id.

            In certain
circumstances, a police officer may reasonably seize an individual through the
exercise of the community caretaking function even without reasonable suspicion
or probable cause that an offense has been committed.  Id. (citing Wright v. State, 7 S.W.3d 148, 151–52
(Tex. Crim. App. 1999); see Cady v.
Dombrowski, 413 U.S. 433, 441 (1973). 
As part of an officer’s duty to “serve and protect,” an officer “may
stop and assist an individual whom a reasonable person, given the totality of
the circumstances, would believe is in need of help.”  Id. (citing Wright, 7 S.W.3d at 151); Bilyeu v. State, 136 S.W.3d 691, 698
(Tex. App.—Texarkana 2004, no pet.). 
This exception to the warrant requirement has “narrow applicability.”  Laney,
117 S.W.3d at 859.

            The
community caretaking exception cannot be used if the officer is primarily
motivated by a different purpose, such as law enforcement.  Corbin,
85 S.W.3d at 276.  The record reflects
that Poole stopped Travis “to check the welfare of the driver” based on a
possible “medical or intoxication” problem. 
The trial court, as the exclusive judge of credibility and the fact-finder,
could have concluded Poole was primarily motivated by community caretaking
concerns.  Id. at 277.  Given that determination,
we examine whether Poole’s belief that Travis needed help is reasonable by
looking at four factors:

(1) the
nature and level of the distress exhibited by the individual; (2) the location
of the individual; (3) whether or not the individual was alone and/or had
access to assistance other than that offered by the officer; and (4) to what
extent the individual, if not assisted, presented a danger to himself or
others.

 

Id. (quoting Wright, 7 S.W.3d at 151–52).

 

            Since “the
purpose of the community caretaking exception is to allow an officer to “seize”
and assist an individual whom he reasonably believes is in need of help, the
first factor is entitled to the greatest weight.”  Id.  In this case, this factor undeniably weighs
against admission since Poole testified Travis did not appear to be in distress.  See id.
at 277–78.  Although there is record
evidence that Travis was driving on a county road suggesting isolation, he may
have been close to an intersection.  It
is the State’s burden to demonstrate the reasonableness of the stop.  State
v. Dixon, 151 S.W.3d 271, 273 (Tex. App.—Texarkana 2004), aff’d, 206 S.W.3d 587 (Tex. Crim. App.
2006).  We find this factor to be
neutral.  See Corbin, 85 S.W.3d at 278.  Poole testified Travis was alone,
indicating that he did not have access to assistance.  However, because Travis was not distressed, there
is not much weight to this factor.  In
regard to the fourth factor, Poole testified he had no reason to believe Travis
was a danger to himself or others. 
Nevertheless, Poole stopped Travis “to check his current state, his
welfare, to make sure he is okay.”  While
the trial court was free to consider Poole’s subjective concern, we find Poole’s
belief that Travis required aid objectively unreasonable.  Therefore, the narrow community caretaker
exception did not justify Poole’s stop.  Thus,
Travis’ Fourth Amendment rights were violated. 

            Having found
constitutional error, we must conduct a harm analysis to determine whether it
calls for reversal of the judgment.  Tex. R. App. P. 44.2.  To determine whether prejudice occurred by
the introduction of improperly admitted evidence at trial, we evaluate the
entire record in a neutral manner, and must reverse unless we determine “beyond
a reasonable doubt that error did not contribute to the conviction or
punishment.”  Id.  Here, the only evidence
that Poole was DWI came from Poole’s testimony of events occurring after the
traffic stop.  Without the evidence which
should have been suppressed, nothing in the record would prove Travis drove
while legally intoxicated.  After carefully
reviewing the record and performing the required harm analysis under Rule
44.2(a) of the Texas Rules of Appellate Procedure, we are unable to determine
beyond a reasonable doubt that the trial court’s denial of Travis’ motion to
suppress did not contribute to his conviction or punishment.  Accordingly, we sustain Travis’ first point of
error.

            We reverse
the trial court’s judgment and remand this case to the trial court for further
proceedings consistent with this opinion.

 

 

 

                                                                                    Josh
R. Morriss, III

                                                                                    Chief
Justice

 

Date Submitted:          July
19, 2010

Date Decided:             August
5, 2010

 

Publish

 











[1]Originally
appealed to the Twelfth Court of Appeals, this case was transferred to this
Court by the Texas Supreme Court pursuant to its docket equalization
efforts.  See Tex. Gov’t Code Ann.
§ 73.001 (Vernon 2005).  We are unaware
of any conflict between precedent of the Twelfth Court of Appeals and that of
this Court on any relevant issue.  See Tex.
R. App. P. 41.3.

 





[2]The
record lists Travis’ birthdate as August 12, 1951, making him fifty-six years
old at the time of the offense.  While
admittedly age categorizations can depend on one’s perspective, we doubt the
reference to an “elderly subject” referred to Travis.





[3]Travis
contends that the evidence would be legally and factually insufficient for a
jury to render a verdict of guilt if this evidence was suppressed.  However, in reviewing legal and factual
sufficiency, we consider all of the evidence, whether improperly admitted or
not.  Berry
v. State, 233 S.W.3d 847, 854 (Tex. Crim. App. 2007); Conner v. State, 67 S.W.3d 192, 197 (Tex. Crim. App. 2001).  From the record, it is clear that a rational
jury, as a finder of fact, could have found beyond a reasonable doubt the
essential elements of DWI and that the verdict was not manifestly unjust,
shocking to the conscience, or demonstrative of bias.  See Jackson
v. Virginia, 443 U.S. 307, 318–19 (1979); Hooper v. State, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007); Watson v. State, 204 S.W.3d 404, 415 (Tex.
Crim. App. 2006).

 





[4]As
finder of fact, the trial court was free to disbelieve Poole’s testimony of
statements made by Travis’ brother.

 





[5]There
is no ruling on the record regarding the community caretaker exception.  However, because evidence subject to the
motion to suppress was admitted in front of the jury, we conclude that the
trial court impliedly ruled the community caretaker exception applied.





[6]Poole
explained that he did not have any articulable facts that would lead to a
reasonable suspicion that Travis was DWI, that he did not pull Travis over in
suspicion of DWI, and that no traffic laws were violated.